## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-25023-BLOOM/LOUIS

LYL VALENTINO,

     Plaintiff,

vs.

ANDREW SAUL, Commissioner
of Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** is before the Court on Plaintiff Lyl Valentino's Motion for Summary Judgment (ECF No. 18) and Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 21). The Honorable Beth Bloom, United States District Judge, has referred the cross motions to the undersigned for a Report and Recommendation (ECF No. 2). The undersigned has fully considered the Motions and the record and is otherwise duly advised in the matter.

Because the undersigned concludes that the Administrative Law Judge's ("ALJ") Residual Functional Capacity assessment is not supported by the substantial evidence of the record for it fails to properly assess Plaintiff's symptoms and limitations, and because the ALJ's credibility determinations as to Plaintiff's treating physician is not supported by substantial evidence, the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED** and Defendant's Motion be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to accord proper weight to Plaintiff's treating physicians, and to reassess steps three

1

through five of the Social Security Administration sequential evaluation process, as further explained below.

## I.     PROCEDURAL BACKGROUND

This case involves an application for social security disability benefits under the Social Security Act (the "Act"), 42 U.S.C. §401 *et seq.* On April 15, 2016, Plaintiff applied for social security disability insurance benefits and supplemental security income under Title II and XVI of the Act alleging an ongoing disability that began on June 15, 2013 (R. 15; 264-274). The onset date was subsequently changed by Plaintiff to July 1, 2016 (R. 287). These claims were initially denied on December 7, 2016, and again denied upon reconsideration on February 23, 2017 (R. 15; 79-126).

Following the denial of her claims, Plaintiff requested an administrative hearing, which was held on October 1, 2018, before ALJ James C. Cartledge (R. 42-78). At the hearing, Plaintiff was represented by counsel, and both Plaintiff and Vocational Expert, Jeff Barrett, testified (*id.*).

On January 15, 2019, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits and supplemental income because Plaintiff was not disabled within the meaning of the Act (R. 25). Plaintiff requested a review of the ALJ's decision. The Appeals Council denied the Plaintiff's request on October 10, 2019 (R. 1-5). Plaintiff now seeks judicial review of the ALJ's decision, and both parties moved for summary judgment. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## II.     STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether

the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## B.  Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical,

physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Regulations outline a five-step, sequential evaluation process used to decide whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At the first two steps, the claimant must show that she is not currently engaged in substantial gainful activity and that she has a severe impairment. *See id.* §§ 404.1520(a)(4)(i) and (ii), 416.920(a)(4)(i) and (ii). Neither point is contested here: it is undisputed that Plaintiff is not engaging in substantial gainful activity and the ALJ determined Plaintiff has a combination of impairments that are "severe." Third, the claimant has an opportunity to show that the impairment meets or equals the criteria in one of the Listings of Impairments ("the Listings"). *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a Listing and meets the duration requirement (20 C.F.R. § 404.1509), the claimant is disabled. *Id.* If it does not, the ALJ proceeds to the fourth step. At the fourth step, the ALJ considers the claimant's residual function capacity and the claimant's relevant past work to determine if she has an impairment that prevents her from performing her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to show that there are jobs that the claimant can perform. *See Jones*, 190 F.3d at 1228; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### C. THE RECORD

### A. Hearing Testimony

#### i.    Plaintiff's Testimony

Plaintiff was 43 years old at the time of the hearing and lived in an efficiency room (R. 53; 59). Plaintiff testified that she has three children, ages 23, 18 and 16, but they had not lived with her for the past three years (*id.*). Plaintiff testified that she worked from 2003 – 2014 as a hairdresser, and then briefly resumed working the first half of 2016 (*id.*). Plaintiff testified that she had stopped working in 2014 due to health issues including fibromyalgia, carpel tunnel and migraine headaches, which often caused her to go to the emergency room (R. 55).

Plaintiff testified that the migraine headaches cause nausea, neurological problems on the side of her face, sensitivity to light, and neck pain, and which result in the need to lay down in a room with no light for at least three hours (R. 62-63). Plaintiff testified that she suffers from these migraine headaches three times a week, despite receiving Botox and other medications as treatment (R. 63). She further claimed that these migraine headaches have caused her to miss work many times (R. 64).

As for fibromyalgia, Plaintiff testified that it causes her to wake up every morning with fatigue, pain and a tingling sensation (R. 65). She blames her fibromyalgia to her suffering of depression and her inability to take care of her children (*id.*). Plaintiff stated that she was unable to care for her 16-year-old son because she was not able to drive or get up in the morning due to certain medications she takes for fibromyalgia; and because she is not able to prepare meals (R. 65-67). Plaintiff also stated that fibromyalgia, along with her carpal tunnel syndrome, made her unable to use her requisite work tools (i.e. hairbrush, blow dryer, scissors, comb) because her hands would become numb, certain tools were too heavy for her to hold and she would get pain in her

fingers and forearms (R. 28).

### ii. Vocational Expert Testimony

Jeff Barrett, a Vocational Expert, also testified at the hearing (R. 54; 69-77). The Vocational Expert testified that Plaintiff's previous job title was a hair stylist, which has an exertional level of light and a specific vocational profile ("SVP") of 6 (R. 54). On the first hypothetical, the ALJ asked the Vocational Expert if an individual with the same age, education, work experience as the Plaintiff, who is able to perform light work, except that they can only occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk with normal breaks for six hours a day; sit with normal breaks for six hours a day; had no additional limits for pushing and pulling; and is limited to frequent handling and fingering of both hands would be able to perform Plaintiff's past relevant work (R. 69). The Vocational Expert testified that with frequent fingering and handling one would be able to perform Plaintiff's past relevant work, but such work could not be done if limited to occasional fingering and handling (R. 72). The Vocational Expert found that based on this first hypothetical, but being limited to occasional fingering and handling, an individual could perform work as a dealer accounts investigator, a counter clerk, or an usher – all with a light excretion level and an SVP of 2 (R. 72-24).

Additionally, the ALJ posed a second hypothetical and asked the Vocational Expert if there were any available jobs for an individual with the same traits as those in the first hypothetical, but being limited to occasional fingering and handling and, due to severe migraines, would be out of work two days a month outside of normal leave and other breaks (R. 74). The Vocational Expert testified that under this hypothetical, having to miss two days a month would result in unemployment (R. 75).

### B.  Summary of Relevant Medical Evidence

### i.     Treating Physicians at University of Miami

Plaintiff was primarily seen by physicians and treated at the University of Miami Hospitals and Clinics ("UM"). Tamar Ference, M.D. is board-certified in Physical Medicine and Rehabilitation, and saw Plaintiff every two to three months from December 2016 to April 2017 at UM (R. 404-405; 422-424; 671-674; 995-999; 1030-1034; 1075-1079). At these appointments, Dr. Ference often found that Plaintiff constantly suffered from pain at a level of 8/10; that this pain worsened with standing and walking but was improved by lying flat; that Plaintiff suffered from fatigue, anxiety and depression; and that she suffered from 18/18 tender points as per the fibromyalgia map (*id.*). Dr. Ference also found that Plaintiff had full range of motion in her upper and lower extremities; had no edema of the extremities; had no laxity or subluxation in both the upper and lower extremities; displayed 5/5 motor strength in both the upper and lower extremities; had intact sensation; and displayed no visible swelling on physical examination (*id.*). As treatment, Dr. Ference consistently prescribed pain medications, such as Toradol, Savella, Cymbalya. Lyrica and Diclofenac (R. 391; 424; 674; 999; 1034; 1079).

Sherin Ghali, M.D. also treated Plaintiff at UM. Dr. Ghali provided a medical source statement, dated September 26, 2019, that stated Plaintiff met the American Rheumatological criteria for fibromyalgia, based on Dr. Ference's notes; that Plaintiff frequently experienced symptoms severe enough to interfere with attention and concentration; that Plaintiff could only sit for roughly 4 hours a day and stand for roughly two hours a day; that Plaintiff would need unscheduled breaks two to three times a day; that Plaintiff could never lift more than ten pounds; that Plaintiff's impairments are likely to produce "good days" and "bad days"; that Plaintiff would likely be absent more than three times a month due to her impairment; and that Plaintiff would not

be able to perform light or sedentary work on a sustained basis (R. 1181-1186). In addition to this medical source statement, Dr. Ghali filled out a migraine questionnaire dated September 26, 2019, which stated that Plaintiff suffered from severe migraines roughly three times a week that caused vertigo, nausea/vomiting, visual disturbances, photosensitivity and the inability to concentrate (R. 1176-1177). Dr. Ghali's questionnaire also stated that Plaintiff would be precluded from performing basic activities; would need a break from work during migraine headaches; and further concluded that as a result of these migraines, Plaintiff would likely be absent from work more than four days a month (R. 1179-1180).

Plaintiff was also treated at UM by Hong Jiang, M.D., a board-certified neurologist (R. 378-379). In October 2015, Plaintiff began receiving regular Botox injections from Dr. Jiang to treat her chronic migraine headaches (R. 438-439). She continued to receive Botox injections thereafter in February 2016 (R. 405-406), May 2016 (R. 398-399), August 2016 (R. 988), November 2016 (R. 378-379), April 2017 (R. 1082-1083), August 2017 (R. 1129-1130) and August 2018 (R. 1162-1164). Dr. Jiang filled out a migraine questionnaire, dated April 11, 2017, roughly a year and half after Plaintiff began Botox treatment (R. 1086). This questionnaire stated that Plaintiff suffered from migraines that caused nausea/vomiting, photosensitivity, inability to concentrate and mood swings (R. 1086). Dr. Jiang further concluded that Plaintiff would be precluded from performing basic activities and need a break from work during migraine headaches; that Plaintiff was incapable of even low stress jobs; and that Plaintiff would likely be absent from work about three times a month (R. 1088-1089).

Finally, Plaintiff was treated for major depressive disorder by UM psychiatrist Roberto Hernando, M.D (R. 368-372; 1169-1171; 1189-1195). In his medical source statement, Dr. Hernando stated that Plaintiff suffered "marked" restriction in work-related mental activities

including understanding and remembering short and simple instructions; carrying out short and simple instructions; understanding and remerging detailed instructions; carrying out detailed instructions; making judgments on simple work-related decisions; interacting appropriately with the public, supervisors and co-workers; responding appropriately to work pressures and responding appropriately to changes in a routine work setting (R. 1169-1170). Marked is defined as there being a "serious limitation in this area" (R. 1169).

### ii.   State Agency Consultants

Plaintiff's psychological profile was reviewed by two psychologists, Mike Dow, Ph.D. and Adrine McKenzie, Ph.D. (R. 93-98; 107-108). Dr. Dow completed a medical evaluation in December of 2016, finding that Plaintiff has a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulty in maintaining concentration, persistence or pace (R. 94). He also found that Plaintiff suffers from one or two repeated episodes of decompensation, each of extended duration (*id.*). To explain these findings, Dr. Dow points to a November 2016 Report of Contact claiming Plaintiff "cares for two teenagers," "uses public transportation," is "able to shop and make routine financial transactions," "enjoys arts and crafts projects" and is "able to do laundry and wash dishes" (*id.*). In a February 2017 evaluation, Dr. McKenzie relies on this same 2016 Report of Contact as evidence in determining Plaintiff had a mild impairment as to her ability to understand, remember or apply information; interact with others; concentrate persist or maintain pace; and adapt or manage herself (R. 107-108).

Plaintiff was also evaluated by Frank Walker, M.D., a pediatric nephrologist (R. 109-110; 352). Dr. Walker found that despite displaying 18/18 tender points, claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, and could stand and/or walk for about six hours and sit for about six hours (*id.*). Dr. Walker also concluded that the Botox treatment

improved Plaintiff's headaches by 60% (*id.*).

### C.  The ALJ's Decision

After reviewing the evidence and conducting the five-step inquiry, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of July 1, 2016, and denied her application for benefits (R. 25). At step one, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since July 1, 2016 (R. 17). At step two, the ALJ found Plaintiff to suffer from migraine, fibromyalgia and carpal tunnel syndrome, all of which were severe impairments that significantly limit the Plaintiff's ability to perform basic work activities (R. 17-18). At step three, the ALJ found that Plaintiff's impairments did not meet one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 19). In particular, the ALJ found that Plaintiff's impairments did not meet or equal the criteria of Listings 1.02 (Major Dysfunction of a Joint) and 11.00 (Neurological Disorder) (R. 19-20). The ALJ did recognize that Plaintiff had fibromyalgia, but concluded it was not of Listing level severity (R. 20). At step four, the ALJ determined that Plaintiff had a residual functional capacity to perform light work, with limits on how much Plaintiff could lift, carry, sit and stand as well as being limited to frequent handling and fingering with both hands (R. 20).

After reviewing the evidence and Plaintiff's testimony, the ALJ found that although the Plaintiff's impairments could reasonably be expected to cause her symptoms, Plaintiff's statements regarding the intensity and limiting effects of his symptoms were not entirely consistent with the evidence of the record (R. 21). In making this determination, the ALJ considered Plaintiff's statements memorialized in the 2016 Report of Contact regarding her capability to engage in daily activities such as taking care of her teenage children, using public transportation, attending doctor appointments, doing laundry and dishes, helping her children with chores and taking care of her

personal hygiene; Plaintiff's reported improvements were also considered (R. 21). The ALJ also considered opinion evidence. The ALJ afforded Plaintiff's treating physicians, Dr. Ghali and Dr. Jiang's opinions partial weight after determining that all these medical opinions were inconsistent with the treatment notes (R. 22). The ALJ also found Dr. Ghali's opinion to be inconsistent with Plaintiff's prior admission, taken from the 2016 Report of Contact, of independent and busy activities of daily living including taking care of her children (R. 22), despite more recent testimony that her youngest child has been living with his father for years because she could no longer take care of him (R. 65-67). The ALJ afforded little weight to the opinion of Plaintiff's treating physician, Dr. Hernando, because his opinion was said to be extremely dire, overly pessimistic and not consistent with the record evidence or the 2016 Report of Contact statement (R. 23). The ALJ accorded great weight to the medical opinions of the State Agency reviewing physicians (R. 22-23).

The ALJ further determined that the Plaintiff was unable to perform past relevant work as a hair stylist based on testimony from the Vocational Expert (R. 23). Subsequently, the ALJ moved to step five of the inquiry and determined that there were jobs in the national economy that the Plaintiff could perform (R. 24). Specifically, the ALJ concluded that Plaintiff could perform the jobs of dealer accountant investigator, counter clerk, and usher (R. 24). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Act from the alleged onset date through the date of the decision (R. 25).

**D. DISCUSSION**

On appeal, Plaintiff argues that the ALJ committed reversible error in denying Plaintiff's application for benefits. First, Plaintiff argues that the ALJ failed to properly assess her alleged symptoms. Second, Plaintiff contends that the ALJ's Residual Functional Capacity ("RFC")

finding is not supported by the substantial evidence on the record. Third, Plaintiff argues that the ALJ failed to articulate the requisite good cause for according partial weight to the medical opinions of Plaintiff's treating physicians.

Defendant avers that substantial evidence supports the ALJ's denial of social security benefits. Particularly, Defendant argues that substantial evidence supports the ALJ's RFC finding. Defendant also argues that the ALJ gave proper weight to the Plaintiff's treating physicians' opinions, and that substantial evidence supports the ALJ's determination that the Plaintiff's statements regarding her symptoms were inconsistent with the medical evidence on the record.

## A. The ALJ's RFC Finding Is Not Supported by Substantial Evidence of the Record Because the ALJ Failed to Properly Assess Plaintiff's Alleged Symptoms and Limitations

Plaintiff's first and second arguments aver that the ALJ's findings were not supported by substantial evidence of the record. Plaintiff avers that the ALJ's discounting of her symptoms and testimony provided at the hearing resulted in an RFC which was not supported by substantial evidence of the record. Likewise, Plaintiff avers that the ALJ failed to properly asses her alleged symptoms and limitations pertaining to the intensity, persistence, and limiting effects of her symptoms. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record.

When a plaintiff attempts to prove disability based on his subjective complaints, she must provide evidence of an underlying medical condition and either 1) objective medical evidence confirming the severity of his alleged symptoms, or 2) evidence establishing that his medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that she has an impairment

that could reasonably expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*.

First, Defendant avers that despite Plaintiff's complaints of pain and allegations that she could not work, the objective medical findings and other evidence in the medical records do not indicate that Plaintiff's condition was as limiting as she claimed. Second, Defendant avers that the substantial evidence of the record regarding her activities of daily living demonstrates that Plaintiff was not as limited as she claimed.

As to the first argument, Defendant states that the ALJ relied on Plaintiff's treating physicians' treatment notes that showed Plaintiff's migraines were "much improved" with the injections and that her headaches had reduced from daily severe headaches to only about two migraines per month (ECF No. 21 at 16). The ALJ relied on these findings of improvement in discounting Plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms. However, Defendant's argument must be rejected in light of binding Eleventh Circuit precedent. *See Sharfaz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

In *Sharfarz*, a treating physician opined that a patient was totally incapable of employment because he suffered from osteoarthritis with pain and limited motion. *Id*. The ALJ gave his opinion little weight, finding that it was inconsistent with a treatment note from the same physician stating that the patient was "significantly better." *Id*. The Eleventh Circuit held that this note did not provide a "sound basis" for the ALJ to reject the physician's opinion that the patient was unable to work. *Id*. The Eleventh Circuit explained that the statement about the patient's improvement needed to be viewed in context of the entire record, which included a treatment note from the previous appointment stating that the patient had complained of exacerbating pain and was unable

13

to walk unless assisted by another person. *Id.* Given the context of the note, the Eleventh Circuit held that there was no contradiction between a treatment note stating that the patient was doing "significantly better" and the physician's ultimate opinion that the patient was unable to work. *Id.*

Here, the undersigned cannot say that the substantial evidence supports the ALJ's conclusion that Dr. Jiang's treatment notes stating Plaintiff had improved contradicted his opinion, or Plaintiff's statements, that Plaintiff continued to experience limitations. In fact, Dr. Jiang's notes specifically state that while Plaintiff was much improved from the Botox treatment, she still suffered from about two severe headaches each month (R. 398), which is consistent with his finding that Plaintiff would have to miss work a few times a month (R. 1088-1089). This is also consistent with Dr. Ghali's more recent medical source statement and migraine questionnaire, which found the same (R. 1179-1180; 1181-1186). Despite notes claiming improvements, both of Plaintiff's treating physicians opined that the persistence and limiting effect of Plaintiff's symptoms were severe and would result in Plaintiff needing to miss work multiple days a month (R. 1085-1088; 1178-1180). If these treating physician's opinions are not to be discredited by notes indicating improvement, neither should Plaintiff's statements claiming the same. Thus, Plaintiff's claim that she suffers from limiting effects of her symptoms is not inconsistent with the evidence on record and the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations.

Further, the ALJ's opinion relies on record evidence describing Plaintiff's activities of daily living, yet the ALJ makes no determination as to Plaintiff's own testimony that she cannot care for her child, she cannot cook meals, she cannot drive or get up in the morning, and she has trouble holding objects as heavy as a blow dryer (R. 67-68). Instead, the ALJ simply cites to the 2016 Report of Contact (R. 299) to demonstrate daily abilities, while failing to acknowledge evidence that supports Plaintiff's claim of her symptoms and limitations. Seemingly relying on

14

this one 2016 Report of Contact, the ALJ concluded that "there is no indication the claimant could not be more functional and active, should she wish to be" (R. 21). Yet, there is evidence that indicates otherwise, which the ALJ ignores without explanation. For instance, the ALJ failed to make any mention of Plaintiff's testimony regarding her limitations provided at the hearing, which "underscores the inadequacy" of the ALJ's credibility determination. *Lawson v. Astrue*, No. 8:07-CV-243-T-TGW, 2008 WL 681097, at \*3 (M.D. Fla. Mar. 7, 2008) (finding plaintiff demonstrated reversible error with respect to the ALJ's credibility determination, where the ALJ failed to address, much less evaluate, plaintiff's hearing testimony that differed from her prior statements, among other errors). The ALJ also failed to make mention of certain medical evidence that supported Plaintiff's statements, such as Dr. Ference's consistent findings that Plaintiff suffered from pain at a level of 8/10 for which numerous pain medications were prescribed; that this pain worsened with standing and walking but was improved by lying flat; that Plaintiff suffered from fatigue, anxiety and depression; and that she suffered from 18/18 tender points as per the fibromyalgia map.[1]  It may very well be that the ALJ discredited these contentions, however, without articulating why the ALJ discredited this evidence, the undersigned finds that the RFC was not supported by substantial evidence of the record because the ALJ failed to assess Plaintiff's alleged symptoms and limitations.

As such, the undersigned recommends that Plaintiff's Motion for Summary Judgment be

---

[1] The Eleventh Circuit has recognized the importance of subjective findings in determinations of fibromyalgia, for the disease is one where objective evidence is often lacking. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (Fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a individual's described symptoms. Because the impairment's hallmark is thus a lack of objective evidence, we reversed an ALJ's determination that a fibromyalgia claimant's testimony was incredible based on the lack of objective evidence documenting the impairment.") (discussing *Stewart v. Apfel*, 245 F.3d 793, 2000 U.S.App. LEXIS 33214 (11th Cir. Dec. 20, 2000)).

**GRANTED** and Defendant's Motion for Summary Judgment be **DENIED**.

**B.   The ALJ Erred in According Partial Weight to the Opinions of Plaintiff's Treating Physicians**

In seeking reversal of the ALJ's decision, Plaintiff argues that the ALJ failed to accord proper weight to the opinions of Plaintiff's treating physicians. Specifically, Plaintiff avers that the ALJ erred in giving Dr. Ghali's medical source statement partial weight and erred in giving Dr. Jiang's opinion partial weight.

It is well established that the "testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotations omitted).

The reports of treating physicians are considered particularly valuable when treatment has extended over a considerable period of time. *Chester v. Bowen*, 792 F.2d 129, 130 (11th Cir. 1986). By contrast, "the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians are entitled to little weight." *Ortega v. Chater*, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996); *accord Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) ("this court has previously cautioned against rejecting the opinions of treating physicians in favor of the contrary conclusions of consultants who have merely examined an applicant's medical records.").

   **i.   Good Cause Was Not Shown to Discredit Dr. Ghali's Opinion**

Dr. Ghali was one of Plaintiff's treating physicians, who examined Plaintiff roughly 10-12 times over the course of three years (R.1181). The ALJ claimed that Dr. Ghali should only be afforded partial weight because the opinion provided in his medial source statement is unsupported

by treatment records showing reflect heart rate and rhythm, normal range of motion, no edema of the extremities, no laxity or subluxation, intact neurological findings, 5/5 strength, intact sensation, and no visible swelling on physical examination (R. 22). However, the ALJ again failed to address findings in those same treatment records that Plaintiff suffered from a pain level of 8/10 for which she was prescribed numerous pain medications; that this pain worsened with standing and walking but was improved by lying flat; that Plaintiff suffered from fatigue, anxiety and  depression; that she suffered from 18/18 tender points as per the fibromyalgia map; and that she suffered from chronic neck and upper back pain (R. 1030; 1066; 1075) – all of which support Dr. Ghali's opinion.

Furthermore, as noted by Plaintiff, none of the clinical findings relied upon by the ALJ in discrediting Dr. Ghali's opinion regarding fibromyalgia are relevant in evaluating the severity of existence of the disease under SSR 12-2p (Evaluation of Fibromyalgia). The findings that support Dr. Ghali's opinion (pain, tender points, fatigue, anxiety, and depression) are in fact listed as relevant factors under SSR 12-p, yet are largely ignored by the ALJ.[2]

The ALJ also claimed that Dr. Ghali's opinion is inconsistent with Plaintiff's admission of independent and busy activities of daily living including taking care of her children. As addressed above, these findings from a 2016 evidentiary record are contrary to Plaintiff's hearing testimony, which the ALJ made no attempt to reconcile or even address. Therefore, Dr. Ghali's opinion is not inconsistent with the medical records and evidence in this case, and there was not good cause for the ALJ to afford his opinion only partial weight.

### ii.    Good Cause Was Not Shown to Discredit Dr. Jiang's Opinion

Dr. Jiang was also one of Plaintiff's treating physicians, who examined Plaintiff 15 times

---

[2] The ALJ also erred in ignoring these findings of pain, fatigue, anxiety and depression, and instead pointing to factors not addressed under SSR 12-2p such as range of motion, balance and gait in finding that Plaintiff's fibromyalgia is not of listing level severity under step three of its inquiry (R.20).

over the course of roughly three years (R. 1085). While the ALJ recognized that Dr. Jiang's opinion is based on his area of expertise as a neurologist, the ALJ likewise finds that his opinion is to be discredited given findings of reflect heart rate and rhythm, normal range of motion, no edema of the extremities, no laxity or subluxation, intact neurological findings, 5/5 strength, intact sensation, and no visible swelling on physical examination (R. 22). However, the ALJ failed to state how these findings are inconsistent with Dr. Jiang's opinion regarding migraine headaches. As explained in Dr. Jiang's opinion, migraine headaches are not persistent but rather suffered by Plaintiff on occasion for a few hours at a time (R. 1086). Dr. Jiang's opinion further states that Plaintiff's impairment would produce both good days and bad days with treatment (R. 1089). Furthermore, the ALJ failed to show that the clinical findings relied upon in discrediting Dr. Jiang's opinion in any way relate to migraine headaches, let alone discredit the diagnosis of chronic migraine headaches and the resulting limitations. Thus, the ALJ has failed to show good cause as to why Dr. Jiang's opinion was only afforded partial weight.

Because I find that good cause does not exist to discredit Dr. Ghali and Dr. Jiang's opinions, I recommend that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Motion for Summary Judgment be **DENIED**.

### E.  CONCLUSION

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Motion for Summary Judgment be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to reanalyze steps three through five of the Social Security Administration five-step inquiry, including affording proper weight to the opinions of Plaintiff's treating physicians.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date

of this Report and Recommendation to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 18th day of September.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE